A. L. HERTRICH *et al.,* Appellants, v. SOPHIA HERTRICH *et al.*

114  643
119  221

114  643
129   99
d129 494

114  643
142  454

**Will Contest:** NON-EXPERTS: *Opinions.* In an action to set aside a will, non-expert witnesses testified to the mental and physical condition of the testator before and after the execution of the will. Certain questions only elicited answers as to his physical condition, and other answers were to the effect that the witnesses noticed no change or difference in actions or appearance. *Held,* that the answers were of facts and not opinions.

COMPETENCY ON MENTAL CONDITION. In an action to set aside a will, a witness gave an extended history of his "acquaintance," dealings and conversations with the testator both before and after his alleged mental abberration. He was then asked for his opinion as to testator's mental condition, based on what he had testified to. *Held,* that the testimony was admissible, an "acquaintance" being necessarily derived from a series of transactions or conversations.

*Subscribing witness.* The opinion of a subscribing witness to a will as to testator's mental capacity is admissible, without any qualifications, in an action to set the will aside.

FINAL REPORT OF EXECUTRIX. In an action to set aside a will, the final report and petition for discharge of the executrix was properly admitted in evidence to show the amount of the estate.

COMMUNICATIONS BETWEEN HUSBAND AND WIFE. Under Code, section 4607, providing that a husband or wife cannot be examined as to any communications made by one to the other, during marriage, nor shall they be permitted, after the marriage relation ceases, to reveal any such communication, a testator's widow cannot testify to communications made by the testator to her during their marriage, in an action to set aside his will on the ground of mental incapacity.

**Evidence:** DECLARATIONS OF ONE LEGATEE. Evidence that, before the execution of a will, a legatee had asked a confidential adviser of the testator not to advise against the execution of a new will, if the testator consulted him on the subject, is incompetent, in an action to set the will aside for mental incapacity of the testator and to probate a prior will, where there are other and innocent legatees.

SAME: *Conspiracy.* Such testimony was inadmissible against another legatee, an alleged co-conspirator, where no preliminary evidence of the alleged conspiracy had been offered.

*Appeal from Clayton District Court.*—HON. L. E. FELLOWS, Judge.

MONDAY, OCTOBER 14, 1901.

ACTION to set aside and annul the last will of George Hertrich, deceased. There was a trial to a jury, and a verdict and judgment sustaining the will. The plaintiffs appeal.—*Affirmed.*

*J. E. Corlett* and *V. T. Price* for appellants.

*D. D. Murphy* and *Samuel W. Packard* for appellees.

SHERWIN, J.—The testator, George Hertrich, left a will dated April 10, 1894, which was duly probated, and his estate administered upon, before the commencement of this action, which is to set said will aside, and to probate one executed in 1887, on the ground that George Hertrich was of unsound mind when he executed the last will, and that it was obtained through the undue influence of two of the legatees therein named, Sophia and Frank Hertrich. The appellants offered to prove that before the execution of the 1894 will Frank Hertrich had asked a particular friend and confidential adviser of his father not to advise against the execution of a new will if the deceased consulted him on the subject. There was no error in rejecting this testimony for the reason that there are other legatees under the will besides Frank and Sophia Hertrich, and, even if a conspiracy were proven between these two to procure a will by the exercise of fraud or undue influence, the admissions of either one could not be received, because their interests are separate and distinct from the interests of the other legatees, and the entire will must stand or fall together. *In re Adams,* 51 Iowa, 596; 1 Underhill, Wills (1900), section 163; Page, Wills (1901), section 424. And, on the theory of a conspiracy between Frank and Sophia Hertrich, the tes-

timony was not competent as to her, because no preliminary
evidence of such conspiracy had been offered.

II.    Several non-expert witnesses testified as to the
mental and physical condition of the testator before and
after the execution of the will of 1894.    Some of the ques-
tions asked them only elicited answers showing his
physical condition, and in one or two instances they
were to the effect that the witnesses noticed no change
or difference in the testator's actions or appearance.    These
answers were all of fact, and not opinions, as held in *Severin
v. Zack,* 55 Iowa, 30, and *Kostelecky v. Scherhart,* 99 Iowa,
120.    The witness H. Thorson gave a somewhat ex-
tended history of his acquaintance, dealings, and con-
versations with the deceased, both before and after
he was stricken with the sickness which it is claimed pro-
duced mental aberration.    He was then asked for his opin-
ion as to his mental condition, based upon what he had tes-
tified to.    The only objectionable feature of the question,
as we view it, is the request that he base his opinion in part
upon his acquaintance with the deceased.    But the term
"acquaintance" is a general one, and an acquaintance is only
derived from a series of transactions or conversations.    Tak-
ing the question and the answer together, it is very clear that
the answer of the witness was based solely upon the detailed
transactions and conversations with Mr. Hertrich covering
a long term of years.    Furthermore, the jury must have un-
derstood that his acquaintance with the deceased was made
up of the various incidents, transactions, and conversations
he had given in more or less detail, and hence knew what he
based his opinion upon.    What we say here applies as well
to the testimony of two or three other witnesses who were
used as non-experts.    We reach the conclusion that there was
no error in the admission of this testimony.

The witness Preston was a subscribing witness to the
will, and his opinion as to the mental capacity of
the maker thereof at the time was competent with-
out any qualifications.

The contestants sought to prove communications made by the deceased during his lifetime to his wife, Caroline Hertrich, and called her for that purpose. She was not a competent witness, under section 4607 of the Code, which is as follows:

"Sec. 4607.  Communications between Husband and Wife.  Neither husband nor wife can be examined in any case as to any communication made by the one to the other while married, nor shall they, after the marriage relation ceases, be permitted to reveal in testimony any such communication made while the marriage subsisted."

This statute, in our judgment, absolutely closes the mouth of the husband or wife as to any communication made by one to the other during marriage.  It is true that statutes of this kind have been said to treat such communications as privileged and analogous to those which exclude confidential communications, and the various states have enacted similar statutes varying in terms, following the common-law rule on the subject. But where the language of the statute is clear and unambiguous, as is ours, the courts have given and they are bound to give force to the entire wording of the act. Thus, our statute declares "any communications" of this class not receivable.  We cannot, therefore, say that it was the intention of the legislature to limit it to confidential or to "privileged" communications, as the latter term is generally used.  In the highest sense of the word, all communications of this class are privileged, because the law makes them so; but it is not a privilege which may be waived by either party alone, for considerations of public policy and public welfare enter too largely into the sacred relation of husband and wife to permit a disclosure of communications at the will of either.  Nor does death remove the disability. *Stein v. Bowman,* 13 Pet. 209 (10 L. Ed. 129); *O'Connor v. Majoribanks,* 4 Man. & G. 435; *Leppla v. Tribune Co.,* 35 Minn. 310 (29 N. W. Rep. 127); *Dexter v. Booth,* 2 Allen, 559; *Stanley v. Montgomery,* 102 Ind. 102 (26 N. E.

Rep. 213); *Maynard v. Vinton*, 59 Mich. 139 (26 N. W. Rep. 401, 60 Am. Rep. 276); *Brown v. Wood*, 121 Mass. 137; *Scott v. Com.*, 94 Ky. 511 (23 S. W. Rep. 219, 42 Am. St. Rep. 371); *Wilkerson v. State*, 91 Ga. 729 (17 S. E. Rep. 990, 44 Am. St. Rep. 63); *Campbell v. Chace*, 12 R. I. 333; 1 Greenleaf Evidence (16th Ed.), section 254. See, also, *Kelley v. Andrews*, 102 Iowa, 119; *Shuman v. Supreme Lodge Knights of Honor*, 110 Iowa, 480.

The final report and petition for discharge of the executrix was properly admitted in evidence, as it showed the amount of the estate. We have very carefully read and considered the evidence in this case, and think it fully sustains the finding of the jury.

The judgment of the district court is AFFIRMED.